UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
WILLIAM H. ARMSTRONG                )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   Civil Action No. 10-945 (RBW)
                                    )
KAREN THOMPSON, et al.              )
                                    )
        Defendants,                 )
                                    )
UNITED STATES OF AMERICA            )
                                    )
        Respondent.                 )
_____)

## MEMORANDUM OPINION

Having been removed to this Court from the Superior Court of the District of Columbia ("Superior Court") by the respondent, this case is now before the Court for review of the United States Attorney's Office's refusal to certify that the defendants were acting within the scope of their employment when they sent letters that the plaintiff alleges amounted to libel and other common law torts. Although the defendants have submitted various other motions, the Court lacks jurisdiction to preside over this case if it concludes that the defendants were not acting within the scope of their employment; therefore, the Court will examine and decide only the scope of employment issue. For the reasons explained below, the Court finds that the defendants were not acting within the scope of their federal employment when they wrote and mailed the purportedly tortious letters. The defendants' Motion Asserting Their Prima Facie Case For

Certification and Seeking Discovery ("Defs.' Mot. for Cert.") is therefore denied, and the case remanded to the Superior Court.[1]

## I. BACKGROUND[2]

The plaintiff is a former Assistant Special Agent in Charge for the Treasury Inspector General for Tax Administration ("TIGTA"), Special Investigations and Intelligence Division ("SIID"). Complaint ("Compl.") ¶ 4. The defendants, husband and wife, are also former TIGTA employees. Id. ¶¶ 5-6; Gov't's Opp'n at 2. The plaintiff contends that Ms. Thompson, with the assistance, or at least the complicity, of her husband, drafted and distributed six letters containing "false, malicious, and misleading information" about the plaintiff. Compl. ¶ 2.

In August of 2006, Ms. Thompson made a then-anonymous complaint, which the defendants refer to as the "Hotline complaint," Defs.' Mot. for Cert. at 25, to the Department of the Treasury's Office of the Inspector General accusing the plaintiff of unlawfully accessing certain records and databases. Compl. ¶ 8; Gov't's Opp'n at 2. This hotline complaint led to an internal investigation of the plaintiff. Gov't's Opp'n at 2. Neither Ms. Thompson nor Mr. Sutkus were members of the investigative team, and neither was authorized to access the investigation files. Id. at 2-3. While the investigation was ongoing, the plaintiff began looking for another job. Id. at 3. He received an offer of employment from the United States Department of

---

[1] In addition to the defendant's motion, the Court considered the following submissions filed by the parties: the Defendants' Supplemental Memorandum to Motion Asserting Prima Facie Case for Certification of Scope of Employment and Seeking Discovery, Arguing Additionally for Official Immunity Under Federal Common Law ("Defs.' Supp. Mem. on Scope"); the Response of the United States of America in Opposition to Defendants' Motion Asserting Their Prima Facie Case for Certification of Scope of Employment and Seeking Discovery ("Gov't's Opp'n"); Plaintiff William Armstrong Reply on Issue of Certification on Scope of Employment ("Pl.'s Reply"); and the Defendants' Supplemental Factual Basis Supporting the "Reasonable Belief" Asserted in Reply to Government Opposition ("Defs.' Reply").

[2] This court has presided over this matter, albeit not always with the same parties, twice before, and will thus now give only a brief recounting of the facts it deems relevant to its determination of the scope of employment question. See Armstrong v. Geithner, 610 F. Supp. 2d 66 (D.D.C. 2009); Armstrong v. Thompson, et al., Civil Action 09-2086 (RBW) (D.D.C. May 19, 2010) (Order).

2

Agriculture ("USDA"), which he accepted and was scheduled to begin on September 2, 2007. Id.

Then, between August 23 and August 27, 2007, six anonymous letters were sent to the USDA disclosing facts about the TIGTA's internal investigation of the plaintiff, making allegations about the plaintiff's misconduct, and seeking to warn the USDA that hiring the plaintiff was a mistake. Id.; Compl. ¶ 9. There were apparently two different versions of letters sent. The first version, signed "A Very Concerned Person," began "I am writing this letter to inform you that the USDA is making a grave error by hiring Special Agent . . . Armstrong to work in the Office of Investigations." Compl., Exhibit ("Ex.") 1. After providing details of the TIGTA internal investigation, the letter continued: "Unfortunately for the USDA, Harry is now a liability to your agency," Id., Ex. 1, and concluded, "I guess it is true what they say about the government. Instead of dealing with the problem, you pass the problem onto [sic] someone else. Well I guess Harry is your problem now."[3] Id., Ex. 1. The second version of the letter also advised the USDA: "If your agency chooses to conduct a background investigation or contact Mr. Armstrong's supervisor or colleagues, you will find that details of his misconduct are well known by many." Id., Ex. 1. After its receipt of the letters, the USDA rescinded the plaintiff's employment offer. Gov't's Opp'n at 3.

During the course of the plaintiff's initial lawsuit regarding this matter, in which he sued the Department of the Treasury for violations of the Privacy Act, see Armstrong v. Geithner, 610 F. Supp. 2d 66 (D.D.C. 2009), Ms. Thompson admitted that she had sent the letters to the USDA. Gov't's Opp'n at 3; Compl. ¶¶ 9-10. It is unclear how Ms. Thompson came to learn the details she disclosed in the USDA letters, see Compl. ¶¶ 12-14, although the defendants contend that Ms. Thompson pieced together the relevant information from a fellow agent, observation, inference,

---

[3] The plaintiff, William H. Armstrong, uses and is known by the name Harry.

and rumor. Defs.' Mot. for Cert. at 7. Mr. Sutkus has also admitted that he was aware that his wife sent the letters to the USDA, Gov't's Opp'n at 3, but has denied that he assisted Ms. Thompson in preparing or sending either the initial TIGTA complaint or the USDA letters. Compl. ¶¶ 19, 23.

After the plaintiff filed his complaint in the Superior Court initiating suit against the defendants, the defendants requested certification from Rudolph Contreras, Chief of the Civil Division of the United States Attorney's Office for the District of Columbia, that they were acting within the scope of their employment as TIGTA employees at all times relevant to the plaintiff's claims. Gov't's Opp'n at 8. On October 8, 2009, Mr. Contreras, after examining the complaint, the defendants' request for certification and its attachments, and the defendants' testimony in Armstrong v. Geithner, concluded that the defendants were not acting within the scope of their employment when the alleged torts were committed. Id.; Defs.' Mot for Cert. at 5. After a procedural misstep by the defendants, see Armstrong v. Thompson, et al., Civil Action 09-2086 (RBW) (D.D.C. May 19, 2010) (Order), the United States properly removed the case from the Superior Court to this Court for review of Mr. Contreras's denial of the defendants' scope of employment certification.

## II. STANDARDS OF REVIEW

Under the Westfall Act (the "Act"), 28 U.S.C. § 2679 (2006), federal employees are immune from common law tort claims arising out of acts undertaken in the course of their official duties.[4] Wuterich v. Murtha, 562 F.3d 375, 377 (D.C. Cir. 2009); Majano v. United

---

[4] In Westfall v. Erwin, 484 U.S. 292 (1988), the Supreme Court held that federal employees were absolutely immune from state tort liability only if (1) they were acting within the scope of their employment, and (2) their actions were discretionary in nature. Stokes v. Cross, 327 F.3d 1210, 1213 (D.C. Cir. 2003). Congress quickly nullified the Westfall decision with its passage of the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, which negated the discretionary function requirement and provided immunity so long as the employee was "acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1) (2006).

4

States, 469 F.3d 138, 139 (D.C. Cir. 2006). "[W]hen a federal employee is sued for a wrongful or negligent act, the United States Attorney General, or by designation the United States Attorney in the district where the claim is brought, may certify that the employee was acting within the scope of his or her employment." Stokes, 327 F.3d at 1212 (citing 28 U.S.C. § 2679(d)(1) and 28 C.F.R. § 15.3(a)). Upon the Attorney General's or his designee's certification, the employee is dismissed from the action, and the United States is substituted as the defendant in place of the employee. Osborn v. Haley, 549 U.S. 225, 229-30 (2007). If, however, the Attorney General or his designee "has refused to certify scope of office or employment under [the Act,] the employee may at any time before trial petition [a federal district] court to find and certify that the employee was acting within the scope of his [or her] office or employment." 28 U.S.C. § 2679(d)(3). If, after the district court's review, the court determines the employee acted within the scope of her employment, the United States must be substituted as the defendant. Id. Alternatively, if the court concludes the employee acted outside the scope of his or her federal employment, "the action or proceeding shall be remanded to the State court." Id.

The district court may permit limited discovery regarding Westfall certifications and may hold an evidentiary hearing to resolve a material factual dispute regarding the scope of the defendant's employment, Stokes, 327 F.3d at 1214, but not every complaint will warrant further inquiry into the scope of employment issue. Id. at 1216. "[T]here is no right to even limited discovery in a Westfall Act case unless and until a [movant] has made allegations sufficient to rebut the Government's certification" decision. Wuterich, 562 F.3d at 382-83.

To determine whether an employee was acting within the scope of her employment under the Act, courts apply the respondeat superior law of the state in which the alleged tort occurred. Wuterich, 562 F.3d at 383 (citing Wilson v. Libby, 535 F.3d 697, 711 (D.C. Cir. 2008)); see

5

Stokes, 327 F.3d at 1214 ("The court also has noted the scope of employment question is controlled by applicable state law."); Majano, 469 F.3d at 141 ("Scope of employment questions are governed by the law of the place where the employment relationship exists."). When required to review Westfall certifications, and their attendant scope of employment questions, stemming from events occurring in the District of Columbia, the federal courts in this jurisdiction look to the decisions of the District of Columbia Court of Appeals for guidance. See Majano, 469 F.3d at 141. "'As its framework for determining whether an employee acted within the scope of employment, the [District of Columbia Court of Appeals] looks to the Restatement (Second) of Agency (1957).'" Id. (quoting Haddon v. United States, 68 F.3d 1420, 1422-23 (D.C. Cir. 1995)). Under the Restatement,

> [A]n employee's conduct falls within the scope of employment if: (1) it is the kind of conduct he is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the master; and (4) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.

Majano, 469 F.3d at 141 (citing Restatement (Second) of Agency § 228 (1957)).

According to the District of Columbia Court of Appeals, the first prong of the Restatement is satisfied if the employee's conduct is "of the same general nature as that authorized, or incidental to the conduct authorized." Schecter v. Merchants Home Delivery, 892 A.2d 415, 427-28 (D.C. 2006). The authority to engage in the conduct can be express or implied, with implied authority existing when "the act of the servant or agent is incidental to the authorized conduct and furthers the master's business." Sigal Constr. Corp. v. Stanbury, 586 A.2d 1204, 1218 (D.C. 1991). Conduct is incidental to an employee's authorized conduct if it is "foreseeable," Harbury v. Hayden, 444 F. Supp. 2d 19, 33 (D.D.C. 2006), and torts that are a "direct outgrowth of the employee's instructions or job assignment" are foreseeable. Id. Thus,

6

foreseeability measures whether it is fair to hold employers accountable "for the intentional torts of their employees." Id. As to the third element of the Restatement, desire to serve the master, the key inquiry is the employee's intent at the moment the allegedly tortious conduct occurred. Majano, 469 F.3d at 142.

### III. LEGAL ANALYSIS

The Court finds that the defendants have failed to present facts or arguments that satisfy any of the three relevant components of the Restatement[5] and will address each element in turn.

A. The Elements of the Restatement

1. The Kind of Conduct the Employee was Employed to Perform Element

First, Ms. Thompson argues her actions in sending the USDA letters were of the kind she was employed to perform because she reported information regarding Mr. Armstong's false statements to the USDA. Defs.' Mot. for Cert. at 25. Similarly, she asserts that the act of sending the letters was of the same general nature as that authorized by her employer because it was a continuation of, or derivative from, her hotline complaint that initiated the internal TIGTA investigation. Id. Both arguments fail.

Ms. Thompson did not work in the internal affairs group and was not authorized to know the details of TIGTA's internal investigation of the plaintiff. Moreover, the details she did learn were assembled through conversations with a fellow employee (who was presumably violating internal policies by sharing the details of the investigation with Ms. Thompson), office rumors, and her own observations, which were not the duties or conduct for which she was hired by the TIGTA. Accordingly, she had no duty, much less authority, to report the facts of that investigation to the USDA. Gov't's Opp'n at 12. In fact, Ms. Thompson admitted that as a law

---

[5] As there are no allegations of the tortious use of force in this case, the fourth element of the Restatement is not relevant.

enforcement officer, she did not have the authority to disclose that the plaintiff was under investigation by the Department of the Treasury to anyone other than a Treasury attorney or if ordered to do so in court. Id. It can therefore not be said that she was acting in compliance with her position as a law enforcement officer for the TIGTA when she wrote the letters she sent to the USDA. Thus, it was not foreseeable to the TIGTA that Ms. Thompson would possess information concerning the internal investigation of the plaintiff; if anything, it was foreseeable to the TIGTA that Ms. Thompson, in line with her position as a law enforcement officer, would not disclose any sensitive information without prior authorization by a superior. See Haddon, 68 F.3d at 1424 (explaining that to be foreseeable the torts must be a direct outgrowth of the employee's instructions or job assignment). To the extent that Ms. Thompson had a duty as a TIGTA employee to report her suspicions regarding the plaintiff, that duty was fully discharged by her internal hotline complaint, and every action taken after that report surpassed the nature of the duties she regularly performed as a special agent for the TIGTA.

Although it appears that neither a judge of this Court nor the District of Columbia Circuit has addressed a similar scenario, a recent case from the Fifth Circuit, with facts almost identical to those presented here, supports this Court's conclusion that Ms. Thompson's conduct was not of the kind she was employed to perform. See Anderson v. United States, 364 Fed. App'x 920 (5th Cir. 2010). In Anderson, a Social Security Administration ("SSA") employee wrote a letter to the Office of Special Counsel alleging that his supervisor had been "'confiscating' mail from SSA claimants." Id. at 921. After the supervisor brought a defamation action against him, the employee argued that the letter he had written was within the scope of his employment because he was reporting on alleged misconduct. Id. The Fifth Circuit, however, disagreed, noting that the employee's decision to give the information to a third party was not "for the accomplishment

8

of the objective for which he was hired" because he "was not tasked with supervising [the plaintiff] and reporting on her behavior." Id. at 924. The court concluded that any general duty the employee had to "prevent fraud, waste, and abuse was tangential to his [regular] duties." Id. The Fifth Circuit therefore held that the United States Attorney for the Southern District of Texas had erred in certifying the employee's actions as falling within the scope of his employment, and further held that the district court had erred in substituting the United States as the defendant in the plaintiff's tort action. Id. As in Anderson, Ms. Thompson's conduct here was not of the kind she was employed to perform; the defendants have therefore failed to satisfy the first element of the Restatement.

   2. The Authorized Time and Space Element

Next, Ms. Thompson contends that because "one of the letters was written on [her] office computer, and [the letters] were acted on at the USDA during business hours," Defs.' Mot. for Cert. at 25-26, the letters fall within the authorized time and space limits of her employment. The fact that the letters were acted on at the USDA during business hours is irrelevant, as the Court's analysis—or, more properly stated, this prong of the Restatement—focuses on whether the <u>defendants'</u> conduct was within authorized time and space limits, not the chain of events set in motion by the defendants' conduct. Thus, all the defendants offer to substantiate that the allegedly tortious conduct occurred within authorized time and space limits is the fact that either one of six letters or one of two versions of the letters sent to the USDA was written on a work computer. While this may show that Ms. Thompson's conduct was partially within authorized time and space limits, it does not show that her actions occurred <u>substantially</u> within time and space limits. See Healy ex rel. Healy v. United States, 435 F. Supp. 2d 157, 163 (D.D.C. 2006) (concluding that a motor vehicle accident caused by an FBI agent who was specifically

9

authorized to drive a government vehicle to increase his capacity to respond to emergencies and who was transporting an FBI colleague as explicitly permitted by FBI policy, took place substantially within the authorized time and space limits of agent's employment). The defendants therefore fail to satisfy the requirements of this component of the Restatement.

   3. The Actuated by a Purpose to Serve the Master Element

Finally, Ms. Thompson states that the letters were "actuated by a purpose to serve the master," Defs.' Mot. for Cert. at 26 (citing Restatement (Second) of Agency, § 228(1)), and maintains that she "took her duties [as a TIGTA employee] to encompass service to the United States." Id. at 26. While none of the factors are necessarily dispositive of this element on its own, the Court finds that the following three factors cumulatively demonstrate that Ms. Thompson's letters were not written out of a sense of service to her employer. First, the tone of Ms. Thompson's letters strongly suggests that her motivation to send the letters did not spring from a desire to serve the TIGTA specifically, or the United States generally. For example, Ms. Thompson's statement that "I guess it is true what they say about the government. Instead of dealing with the problem, you pass the problem onto [sic] someone else. Well I guess Harry is your problem now," Compl., Ex. 1, is not language that conveys respect for the integrity of her employer, and the Court can only assume that attempts to serve one's employer are not usually expressed with an air of contempt and deprication. Second, the record supports the conclusion that Ms. Thompson was motivated by personal motives, rather than a desire to advance the interests of the Department of the Treasury. See, e.g., Gov't's Opp'n, Ex. 8 (December 4, 2008 Transcript from Armstrong v. Paulson) at 72:24-73:2 (in which the court opines that Ms. Thompson was "acting, as far as anybody can tell, as a rogue person on her own behalf acting out of some sort of vendetta"); Gov't's Opp'n, Ex. 1 (August 26, 2008 Transcript from Armstrong

v. Paulson) at 92:10-11 (indicating that Ms. Thompson stated: "<u>I felt</u> that the federal government should know that Mr. Armstrong had these issues surrounding him.") (emphasis added).  Finally, Ms. Thompson's reluctance to identify herself as the author of the letters underscores the fact that the USDA letters were not written to advance the interests of the TIGTA, as this reticence demonstrates her desire to disassociate herself from the allegations and any responsibilities she could have conceivably believed she owed to her employer in this matter.  Law enforcement officers do not generally level accusations of illegal behavior against others and then sit in the shadows with the hope that those accusations are borne out without their assistance.  Because Ms. Thompson has not demonstrated that she wrote the letters to the USDA to advance the interests of the Department of the Treasury, her conduct cannot be construed as having been actuated by a purpose to serve her master as required by the Restatement.

   B.  <u>The Defendants' Request for Discovery</u>

      The defendants ask the Court to "grant discovery and an evidentiary hearing, . . . [to] establish that their actions fell within the scope of their employment."  Defs.' Mot. for Cert at 8.  Specifically, the defendants request discovery in order to establish a "nexus between the letters sent to the USDA OIG, which are the basis [underlying the plaintiff's theory of liability pleaded in his] Complaint, and Defendants' employment by [the] TIGTA, and to show that the letters derived [from] and were incidental to the hotline complaint to [the] TIGTA."  <u>Id.</u> at 32.

      As noted above, there is no right to even limited discovery to investigate a Westfall certification decision unless a movant has made allegations "sufficient to rebut the government's certification," <u>Wuterich</u>, 562 F.3d at 383.  This standard derives from, and is thus most easily applied to, a factual situation in which the attorney general had granted certification that the

11

defendant was acting within the scope of his or her employment.[6] See Stokes, 327 F.3d at 1214 (concluding that "Stokes' burden was to raise a material factual dispute regarding the substance of [the Assistant United States Attorney's] determination by alleging facts that, if true, would establish that the defendants were acting outside the scope of their employment"). Nonetheless, it stands to reason that the same standard can be applied in the opposite situation where, as here, the Attorney General or his designee has denied certification based on a finding that the employee acted outside scope of his or her employment. Guided by the language of Wuterich (which itself quotes Stokes), see Wuterich 562 F.3d at 381, the standard can be reframed to fit the facts currently before the Court, i.e., to obtain discovery for the purpose of attempting to rebut the denial of a Westfall certification, a defendant must allege sufficient facts that, taken as true, would establish that the actions for which the defendant is seeking immunity from common law tort did not exceed the scope of the defendant's employment. Accordingly, as the movants seeking discovery, the defendants bear the burden of making allegations sufficient to rebut Mr. Contreras' denial of their request for a Westfall certification by demonstrating specific facts that show their actions were within the scope of their employment. For the reasons explained above, however, the defendants' filings with the Court have failed to present such facts. Accordingly, their request for discovery must be denied.

---

[6] In both Wuterich and Stokes, two cases in which the District of Columbia Circuit addressed the issue of discovery on the scope of employment question, the plaintiff was the party seeking discovery after the Attorney General had certified that the defendants were acting within the scope of their employment. Wuterich, 562 F.3d at 378; Stokes, 327 F.3d at 1212. As such, the court in those cases looked closely at the factual allegations contained in the complaint. Wuterich, 562 F.3d at 386 ("His complaint lacking, Wuterich's discovery demands appear to be nothing more than a fishing expedition for facts that might give rise to a viable scope-of-employment claims.") (emphasis in original); Stokes, 327 F.3d at 1215 ("Stokes' complaint contains sufficient factual allegations to warrant discovery on the question of scope of employment."). Here, however, the Court must look to the defendants' contentions in their motion seeking certification.

## IV. CONCLUSION

For the foregoing reasons, the Court finds Ms. Thompson has failed to rebut Mr. Contreras' conclusion that the drafting and dissemination of the letters she sent to the USDA were actions committed outside the scope of her employment with the TIGTA. Accordingly the Defendants' Motion Asserting Their Prima Facie Case For Certification of Scope of Employment and Seeking Discovery is denied and this case remanded to the Superior Court.[7]

**SO ORDERED** this 7th day of January, 2011.

_____/s/_____

REGGIE B. WALTON
United States District Judge

---

[7] The Court has issued a contemporaneous Order consistent with this Memorandum Opinion.